**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| GENERAL ACCESS SOLUTIONS, LTD., <br><br> Plaintiff, <br><br> v. <br><br> SPRINT SPECTRUM LLC, SPRINTCOM, INC., and ASSURANCE WIRELESS USA, L.P. <br><br> Defendants. | Case No. 2:20-cv-00007-RWS <br><br> **JURY TRIAL DEMANDED** <br><br> FILED UNDER SEAL |

**PLAINTIFF GENERAL ACCESS'S CORRECTED MOTIONS IN LIMINE**

## TABLE OF CONTENTS

Issue No. 1: Sprint Should Be Precluded from Relying on the Invalidity of Claims 1 and 19 in this Case................................................................................................................................1

Issue No. 2: Sprint Should Be Precluded from Arguing that Claims 1 and 19 Were Known or Conventional ...........................................................................................................................3

Issue No. 3: Sprint Should Not Be Allowed to Introduce the Vornefeld Reference into Evidence ....................................................................................................................................7

Issue No. 4: Sprint Should Be Precluded from Offering Expert Opinions Inconsistent with the Court's Claim Construction Decisions ...........................................................................7

Issue No. 5: Sprint Should Be Precluded from Offering Expert Opinions Concerning Irrelevant LTE Features and Patents....................................................................................9

Issue No. 6: Sprint Should be Precluded from Relying on the MTEL Settlement Agreement ...........10

Issue No. 7: Sprint Should Be Precluded from Arguing that General Access Failed to Comply with any Disclosure Obligations to Standard Setting Bodies or that It Is Subject to any RAND/FRAND Obligations.....................................................................12

Issue No. 8: Sprint Should Be Precluded from Relying on Mr. Grabner's Documents .......................13

Issue No. 9: Sprint Should Be Precluded from Attempting to Use Statements in General Access's Complaints as Admissions ...................................................................................15

**Issue No. 1: Sprint Should Be Precluded from Relying on the Invalidity of Claims 1 and 19 in this Case**

After years of shifting invalidity contentions, Sprint made a tactical decision to rely on only two prior art references in connection with its obviousness defense: Navini and Toshimitsu. *See* Ex. A, Andrews Invalidity Report, ¶ 127. Due to its reliance on Vornefeld in the IPR, Sprint is estopped from asserting the Vornefeld reference at trial. Even earlier in the case, Sprint therefore omitted any reference to Vornefeld from its final invalidity contentions. *See* Ex. B Sprint's Second Amended Invalidity Contentions ("restricting the §§ 102 and 103 assertions" to certain specific systems and publications, not including Vornefeld). It appears, however, that Sprint is going to try to circumvent its inability to rely on Vornefeld by treating Claims 1 and 19—which General Access surrendered in the IPR solely on the basis of Vornefeld—as if they are prior art to Claims 28 and 29. Specifically, Sprint has indicated it intends to argue to the jury that, because Claims 1 and 19 have been deemed invalid, the jury should focus its validity analysis only on whether the additional elements disclosed in Claims 28 and 29 would have been obvious to a POSITA.[1]

Federal Circuit law precludes Sprint from doing this at trial. The Federal Circuit has "repeatedly emphasized" that "'each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; [and] dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim.'" *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1375 (Fed. Cir. 2003) (quoting 35 U.S.C. § 282 (2000)). "Every claim, even a claim in dependent form, is presumed valid independently of the validity of other claims." *Douglas Dynamics, LLC v. Buyers Prod. Co.*, No. 09-CV-261-WMC,

---

[1] Sprint made a similar argument in its Sur-Reply Brief opposing General Access's Motion that the Navini System Is Not Prior Art. Sprint argued there that the Court should overlook Navini's failure to disclose features that "are contained in claims 1 and 19 and were admitted by GAS as being known in the prior art (and thus known to a POSITA)." Dkt. 238 at 3-4. Sprint included a table listing elements that General Access had purportedly admitted were "disclosed in the prior art." *Id.*

2014 WL 988755, at *5 (W.D. Wis. Mar. 13, 2014).

To the extent that Sprint is permitted to pursue its obviousness defense at trial, it must prove the invalidity of Claims 28 and 29 independently from any prior determination of invalidity as to Claims 1 and 19. In other words, Sprint must establish that all of the elements of Claims 28 and 29—including those set forth in Claims 1 and 19—were in the prior art or were obvious to a person of ordinary skill in the art, and it must do so on the basis of the prior art disclosed in its final invalidity contentions and in its expert report, specifically Navini and Toshimitsu. *See* Ex. A, ¶ 127.

Allowing Sprint to argue that Claims 1 and 19 have already been invalidated would improperly enable Sprint to circumvent IPR estoppel. General Access surrendered Claims 1 and 19 in the IPR based on a single anticipation reference: Vornefeld. Sprint has already tried, and failed, to invalidate Claims 28 and 29 based on Vornefeld and is now statutorily estopped from relying on Vornefeld at trial. *See* 35 U.S.C. § 315(e). Because General Access surrendered Claims 1 and 19 solely on the basis of Vornefeld, permitting Sprint to argue that the elements of Claims 1 and 19 have already been found to be in the prior art would effectively allow Sprint to rely on Vornefeld in this case. To the extent that Sprint seeks to invalidate Claims 28 and 29 in this case, it has the burden of doing so based solely on the prior art it has identified for trial: Navini and Toshimitsu.[2] Sprint should not be permitted to smuggle Vornefeld into this case by relying on General Access's prior surrender of Claims 1 and 19 based entirely on Vornefeld.

Sprint's effort to retool its invalidity case by relying on the determination in the PTAB that

---

[2] Dr. Andrews also ███████████████████████████████████████████████████
███████████████████████████████████████████████████████ Ex. A, ¶ 127. Dr. Andrews briefly ████████████████████
█████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
████████████████████████████████████████████████████

Claims 1 and 19 are invalid should also be barred as untimely. Until the parties met and conferred

concerning these motions, Sprint had never previously disclosed that it would seek to rely on the

PTAB's finding of invalidity of Claims 1 and 19 to support its obviousness defense in this case.

Indeed, Claims 1 and 19 do not appear on any of Sprint's disclosures of prior art or in its invalidity

contentions. Nor did Dr. Andrews disclose an opinion along these lines in his invalidity report.

General Access therefore had no opportunity to develop expert testimony responding to this

argument. Allowing Sprint to now place Claims 1 and 19 at the center of its invalidity defense at trial

would be fundamentally unfair to General Access.

Sprint's intended reliance on the invalidity of Claims 1 and 19 is particularly problematic in

the context of Sprint's obviousness defense. *See Papyrus Tech. Corp. v. New York Stock Exch., LLC*, 653

F. Supp. 2d 402, 429 (S.D.N.Y. 2009) ("Each of [the independent and dependent] claims is …

separately evaluated for obviousness."). The obviousness inquiry does not just ask whether the

individual claim elements existed in the prior art, but also whether a person of ordinary skill would

have been motivated to *combine* the relevant art. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007)

("[A] patent composed of several elements is not proved obvious merely by demonstrating that each

of its elements was, independently, known in the prior art."). Telling the jury that Claims 1 and 19

were in the prior art would not allow the jury to evaluate whether a person of ordinary skill would

have been motivated to combine that art with the additional elements of Claims 28 and 29.

**Issue No. 2: Sprint Should Be Precluded from Arguing that Claims 1 and 19 Were Known or Conventional**

The Court should also preclude Sprint and its experts from asserting that the elements of

Claims 1 and 19 were "conventional" or "known to the public" at the time of the invention of the

'931 Patent. The only evidence Sprint has identified to support those assertions is the fact that

General Access conceded the invalidity of Claims 1 and 19 during the IPR.[3] But General Access's

concession of the invalidity of Claims 1 and 19 does not equate to a concession that the elements of

those claims were "conventional" or widely "known." Sprint's attempt to convert General Access's

narrow concession of anticipation under §102 into a broad concession that the elements of Claims 1

and 19 were conventional or well-known should therefore be rejected.

In the IPR, Sprint asserted that Vornefeld anticipated Claims 1 and 19 under 35 U.S.C.

§ 102. *See* Ex. D, Sprint IPR Petition at 19. To prove invalidity under §102, Sprint did not need to

prove that the elements of Claims 1 and 19 were "known" or "conventional." Instead, Sprint merely

needed to prove that "the claimed invention was [] described in a printed publication . . . before the

effective filing date of the claimed invention." *Id.*  Notably, even obscure printed publications may

invalidate a patent under §102. *See, e.g.*, *Hart v. Baarcke*, 396 F. Supp. 408, 412 (S.D. Fla. 1975) (a

publication can anticipate "no matter how obscure"). For that reason, courts have recognized a

fundamental distinction between the conventional, widely known information presumed to be

within the knowledge of a person of ordinary skill for purposes of written description and

enablement under §112, and the much broader category of publications that may be relied upon as

invalidating prior art under §102. *See In re Howarth*, 654 F.2d 103, 106-7 (C.C.P.A. 1981)

(distinguishing between prior art that can be relied upon under §102 and art pertinent to "what is

likely to be known by persons of ordinary skill in the art" for purposes of §112, and noting that "we

---

[3] Sprint has repeatedly cited General Access's concession that Claims 1 and 19 were anticipated by Vornefeld to support its assertions that those claims were "known to the public" and "conventional." At the June 17 hearing, Sprint argued that "Claim 1 was already **known to the public**, GAS has admitted that." Ex. C at 149:15-16. *See also id.* at 189:20-21 ("In this case, we know that everything in Claim 1 was in the public domain."); Sprint Sur-Reply re Mot. for SJ on Navini, Dkt. 238 at 4 ("claims 1 and 19 were admitted by GAS as being known in the prior art (**and thus known to a POSITA**)" (emphasis added)). Similarly, in its Reply Brief supporting its *Daubert* motion, Sprint criticized Dr. Madisetti for failing to apportion between "the patented improvement and the **conventional** components" of Claims 1 and 19 based only on Vornefeld. Dkt. 219 at 3.

do not *ipso facto* give all patents and printed publications the same evidentiary weight for purposes of showing enablement under §112, even though all such references are treated the same for prior art purposes under §102").

Sprint improperly seeks to convert General Access's concession that Vornefeld constituted a prior art publication under §102 into a much broader concession that it also constituted information within the knowledge of people of ordinary skill under §112. Even more than that, Sprint seeks to turn General Access's concession regarding Vornefeld and §102 into an admission that the elements of Claims 1 and 19 were "known to the public" or "conventional." However, as the Federal Circuit has recognized in the patentability context, "[w]hether a particular technology is well-understood, routine, and conventional goes beyond what was simply known in the prior art. The mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018)

Sprint's attempt to stretch General Access's admission that Claims 1 and 19 were anticipated by Vornefeld into a much broader concession that the elements of the invalidated claims were conventional and well known is belied by the IPR statements on which Sprint relies. For example, when General Access conceded that Vornefeld "knocks out our independent claims," it also emphasized the obscurity of the reference, noting that Vornefeld was "writing articles . . . in the wilderness somewhere" and was not known to Mr. Struhsaker, the inventor of the '931 Patent. Ex. E, IPR Trial Tr. at 57:6-9. As discussed in footnote 2 above, Sprint's expert has expressed similar views. Ex. A, ¶¶ 362, 364.

The distinction between what constitutes prior art under § 102 and what was "well known to the public" or "conventional" is critical here. Sprint intends to argue that damages must be apportioned to account for the fact that Claims 1 and 19 are invalid. For example, Dr. Andrews dedicates an entire section of his report to the argument that ███████████████████████████

5

████████████████████████████████████████████ Ex. F, Andrews Rebuttal Report at

¶¶ 345-64. But the cases Sprint has relied upon to support this argument require only the

apportionment of "conventional" elements in the asserted claims. *See, e.g.*, Dkt. 219 at 3-4 ("the

patent owner must apportion or separate the damages between the patented improvement and the

**conventional** components") (*quoting Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*,

879 F.3d 1332, 1348 (Fed. Cir. 2018) (emphasis added); *id.* (plaintiff must show "how much new

value is created by the novel combination, beyond the value conferred by the **conventional**

elements alone") (*quoting AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1339 (Fed. Cir. 2015)

(emphasis added)); *see also* Ex. C, June 17 Hearing Tr. at 160:23-25 (Sprint counsel arguing that "[t]he

patent owner must apportion or separate the damages between the patented improvement and the

**conventional** components," and that "[t]his is easy, easy law"). Importantly, Dr. Andrews does not

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████ Ex. A, ¶¶ 362, 364.

Sprint has identified no support for the notion that a plaintiff must apportion out every

claim element that happens to be included in a printed publication deemed to be prior art under

§102, no matter how obscure. Indeed, such a regime would be utterly unworkable, requiring experts

to analyze the entire body of §102 prior art and apportion out every claim element appearing in

every §102 reference. Such a requirement was squarely rejected in *AstraZeneca*, which recognized that

novel combinations of previously known elements can have significant value. *See AstraZeneca*, 782

F.3d at 1338–39 ("it has long been recognized that a patent that combines old elements may give the

entire value to the combination if the combination itself constitutes a completely new and

marketable article") (internal quotations and alterations omitted). But even if it were appropriate for

6

Sprint to make such an argument, it would not be appropriate for it to do so based on General

Access's limited concession in the IPR that Claims 1 and 19 were anticipated by a reference that

Sprint is estopped from relying on in this case, and which did not even involve a cellular network.

**Issue No. 3: Sprint Should Not Be Allowed to Introduce the Vornefeld Reference into Evidence**

Sprint should not be permitted to discuss or introduce the Vornefeld reference into evidence

at trial. Because Sprint relied on Vornefeld in the IPR, it is estopped from relying on Vornefeld at

trial. *See* 35 U.S.C. § 315(e). As Sprint conceded, "the PTAB has issued a final written decision

concerning Claims 28 and 29, and statutory estoppel would preclude Sprint from asserting §§ 102

and 103 invalidity grounds" based on Vornefeld. Dkt. 113, Sprint Opp. to General Access Motion

to Strike at 1. Sprint has no legitimate reason to introduce Vornefeld in this case, let alone the sort

of compelling reason that might overcome the significant confusion and unfair prejudice its

introduction would present.

**Issue No. 4: Sprint Should Be Precluded from Offering Expert Opinions Inconsistent with the Court's Claim Construction Decisions**

The Court should preclude Sprint and its technical expert from presenting evidence or

arguments that are inconsistent with the Court's *Markman* decision. *See CardSoft, Inc. v. VeriFone Sys.,*

*Inc.*, No. 2:08-CV-98-RSP, 2012 WL 12895875, at *2 (E.D. Tex. June 3, 2012) (excluding expert

testimony that was inconsistent with statements the court made "[i]n rejecting Defendants' proposed

construction"); *Anglefix, LLC v. Wright Med. Tech., Inc.*, No. 13-CV-2407-JPM-TMP, 2017 WL

2973989, at *8 (W.D. Tenn. July 12, 2017) ("[D]istrict courts . . . have consistently excluded expert

testimony . . . when that testimony contradicted the court's claim construction rulings.").

For example, Dr. Andrews opines that ███████████████████████████████

████████████████████████████████████████████████████████

████████████████ Ex. A, ¶ 227; *see also id.* ¶ 342 ████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████ Sprint made the

same argument in its *Markman* brief, where it asked the Court to limit the claims to pre-programmed

beams because "[t]he '931 patent does not disclose or even suggest any other type of beam scanning,

nor does it disclose or suggest any non-pre-programmed directed scanning beams." Dkt. 88 at 18.

The Court disagreed, finding that "[t]he '931 patent also discloses structure for creating directed

beams that suggest the beams can be directed in real time and are not limited to a pre-programmed

set." Dkt. 105, Claim Construction Order at 25. The Court's order went on to explain that Figure 11

depicts "a beam-forming system" that "'allows for rapid calculation of adaptive cancellation.'" *Id.* at

27 (quoting '931 patent at 27:45–49).

The Court rejected the interpretation Dr. Andrews now asserts, concluding that "the '931

patent teaches that directed scanning beams are formed by beam-forming systems, they are used for

receiving and not just transmitting and beam forming may be via 'rapid calculation of adaptive

cancellation,' rather than simply through 'pre-programmed weights or delays.'" *Id.* (quoting '931

patent at 27:45–49). Sprint should not be permitted to revisit this now-settled issue.

Similarly, in rejecting Sprint's effort to limit the asserted claims to "fixed" wireless access

devices, this Court noted that "the patent itself suggests that the wireless access devices are not

necessarily fixed." Dkt. 105 at 20. But in his report, Dr. Andrews opines ████████████████

████████████████████████████████████████████████████

████████████████████████████ *See* Ex. A, ¶¶ 246, 248. Even more egregiously, Dr. Andrews asserts

that ██████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████ Dkt. 105 at 18. Sprint should not be permitted to

present opinions that contradict the Court's *Markman* ruling.

8

**Issue No. 5: Sprint Should Be Precluded from Offering Expert Opinions Concerning Irrelevant LTE Features and Patents**

In his report, Dr. Madisetti quantifies the extent to which the Asserted Claims increase the throughput of Sprint's base stations. As the Court recognized in its Order on Sprint's *Daubert* motion, "Dr. Madisetti's report is quite clear—when he performed his second, further-apportioned analysis he attempted to separate the benefit of beamforming generally from the benefit added by the management protocol of the Asserted Claims." Dkt. 293, Order at 7. Mr. Kennedy considers Dr. Madisetti's conclusions regarding those throughput benefits to support his damages opinions.

In a transparent effort to justify the introduction of irrelevant LTE features and patents, Dr. Andrews misconstrues Dr. Madisetti's analysis and states that █████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████

Because Dr. Madisetti's analysis of the technical benefits of the invention focuses specifically on the incremental throughput benefits attributable to the Asserted Claims, the relative contributions of the other features, patents, and contributions that Dr. Andrews lists are not relevant to any issue in this case. They are certainly not relevant to rebutting Dr. Madisetti's opinions, which is the excuse Dr. Andrews invokes for introducing them. Moreover, Sprint does not present an alternative damages calculation based on Dr. Andrews' vague and unsubstantiated conclusions that ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████, *id.* ¶317. Indeed, neither Dr. Andrews nor Ms. Davis offer any

9

alternative damages calculation based on the relative contributions of the various technologies at issue. Nor does Sprint present any evidence or opinions regarding royalty stacking or similar issues.

Dr. Andrews' opinions concerning other patents allegedly relevant to its LTE network suffer from two additional defects. First, Dr. Andrews does nothing to determine whether Sprint actually uses any of those other patents in its network or to demonstrate that they are "essential" to any LTE standard. Without that type of patent-specific analysis, any suggestion that the other patents are used by Sprint or essential to the standards is mere speculation. Second, even if Sprint used one or more of these other patents in its LTE network, Sprint has failed to identify any evidence indicating their relevance to this case. Dr. Andrews does not analyze—let alone quantify—how the claims in any other patent impact the throughput in Sprint's network. Permitting Sprint to introduce vague, conclusory opinions regarding other patents will only serve to waste time and confuse the issues.

**Issue No. 6: Sprint Should be Precluded from Relying on the MTEL Settlement Agreement**

Sprint and its damages expert, Julie Davis, should not be allowed to rely on the settlement agreement between MTEL and Clearwire (the "MTEL Settlement"). In 2014, Clearwire and MTEL signed the MTEL Settlement to settle MTEL's lawsuit against Clearwire and Sprint alleging that certain networks infringed three MTEL patents. Ex. G, Davis Rep. at 42. Clearwire agreed to pay $15.5 million for a non-exclusive license to the patents. *Id.* at 43. Ms. Davis opines ██████████████

█████████████████████████████████████████████. *Id.* at 44.[4] Importantly, the MTEL Settlement is ***the only agreement*** Ms. Davis relies on as a comparable license relevant to the amount of damages in this case. Ex. H, Davis Dep. 185:2-5.[5]

---

[4] Ms. Davis ██████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████ *Id.*

[5] Ms. Davis relies on other Sprint settlement agreements solely for the undisputed proposition that

The MTEL Settlement should be excluded because it has no probative value. First, the

MTEL Settlement is a settlement agreement, which are of limited—if any—probative value. In

*LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51 (Fed. Cir. 2012), after recognizing "the

longstanding disapproval of relying on settlement agreements to establish reasonable royalty

damages," the Federal Circuit held the district court had **abused its discretion** by admitting a

settlement agreement that was not "the most reliable license in [the] record." *Id.* at 77 (distinguishing

*ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 870-72 (Fed. Cir. 2010); *see also Eidos Display, LLC v. Chi*

*Mei Innolux Corp.*, No. 6:11-CV-00201-JRG, 2017 WL 1322550, at *4 (E.D. Tex. Apr. 6, 2017)

(excluding settlement agreement under Fed. R. Evid. 403 after noting that, "[w]hile settlement

licenses have been used to assess damages in patent litigation, their admittance is never obtained

without scrutiny because of the inherent risk they pose in skewing a reasonable royalty calculation");

*M2M Sols. LLC v. Enfora, Inc.*, 167 F. Supp. 3d 665, 678 (D. Del. 2016) (observing that "Federal

Circuit precedent is hostile toward using litigation settlement agreements in proving a reasonable

royalty, except in limited circumstances"). Here Sprint and Ms. Davis assert that other evidence—

namely evidence regarding General Access's earlier efforts to sell a portfolio containing the '931

Patent—is more probative than the MTEL Settlement. Ex. G at 32-41.

Second, the MTEL Settlement was signed in February 2014 **after** the hypothetical

negotiation in 2013. *Compare* Ex. G at 29 (hypothetical negotiation in 2013), *with id.* at 42 (MTEL

Settlement signed Feb. 2014). Courts regularly exclude reliance on settlement agreements executed

after the date of the hypothetical negotiation. *See, e.g., Sprint Commc'ns Co. LP v. Charter Commc'ns, Inc.,*

*et al.*, No. 17-1734-RGA, 2021 WL 982732, at **9-10 (D. Del. Mar. 16, 2021) (holding that "prior

---

past damages here should be a lump sum rather than a running royalty. Ex. H at 183:4-11, 184:14-
185:1. This evidence should also be excluded given that Mr. Kennedy agrees Sprint would have
preferred a lump sum.

settlement agreements . . . are not relevant when they occurred after the date of the hypothetical negotiation"); *ePlus, Inc. v. Lawson Software, Inc.*, 764 F. Supp. 2d 807, 813 (E.D. Va. 2011) ("The minimal probative value that can be attributable to settlement agreements that ensue litigation is even less where, as here, the settlement agreements occurred years after the hypothetical negotiation . . . ."); *Eidos Display*, 2017 WL 1322550, at *4 (excluding settlement agreement in part because signed 10 to 13 years after the hypothetical negotiation).

Finally, Ms. Davis



Ex. H, at 186:12-16; *id.* at 172:2-20

In other words, Ms. Davis acknowledges that the MTEL Settlement is not directly comparable in that there had been no determinations of infringement, validity and enforceability, but nonetheless relies on the MTEL Settlement number without any adjustment to account for the fact that patents are presumed to be valid, enforceable and infringed in the hypothetical negotiation. She should not be permitted to do so.

**Issue No. 7: Sprint Should Be Precluded from Arguing that General Access Failed to Comply with any Disclosure Obligations to Standard Setting Bodies or that It Is Subject to any RAND/FRAND Obligations**

Sprint should not be allowed to present evidence or argument that General Access had a duty to disclose the '931 Patent (or the application leading to it) to any standard-setting body. Nor should Sprint be allowed to present evidence or argue that General Access was subject to any relevant RAND/FRAND obligations. There is simply no basis for Sprint to make such arguments.

General Access is accusing Sprint's 4G LTE network. The 4G LTE standards were created by the 3GPP standard-setting body. Ex. I, Struhsaker Dep. 28:7-14; Ex. J, Satapathy Dep. at 56:8-9. Neither General Access nor any of its predecessors were ever a member of 3GPP. And the inventor

of the '931 Patent did not participate in any LTE standard-setting activities. Ex. I at 28:1-3.

General Access's predecessor-in-interest, Raze Technologies, did participate for a short period of time in the IEEE 802.16 committee that developed the WiMAX standards. However, the undisputed evidence is that General Access had no obligation to disclose the '931 Patent to the 802.16 committee because (1) Raze never proposed the invention of the '931 Patent for standardization, and (2) Raze's involvement ended in 2002, years before the beamforming portions of the standard were developed. Ex. I at 278:5-19. But more fundamentally, the 802.16 WiMAX standard is not at issue in this case. The 4G LTE is a different standard adopted by a different standard-setting body. Sprint has never explained why an alleged failure to disclose patents or applications to the IEEE regarding its development of a different standard could be relevant to 3GPP's efforts to develop the 4G LTE standards.

Sprint has offered no expert report opining that General Access had any obligation to disclose the '931 Patent to any standard-setting body or that the '931 Patent is subject to any RAND/FRAND obligations. Given the absence of any factual basis or expert testimony to support any standard-setting defense, Sprint should not be allowed to introduce evidence or argument that General Access, Raze or Mr. Struhsaker had any duty to disclose the '931 Patent to any standard-setting body or that they assumed any RAND/FRAND obligations. To allow Sprint to do so would only waste time, confuse the jury, and unfairly prejudice General Access.

**Issue No. 8: Sprint Should Be Precluded from Relying on Mr. Grabner's Documents**

As explained in General Access's Motion for Partial Summary Judgment of Validity (Dkt. 166 at 23-25), Sprint waited until it served Dr. Andrews' December 18, 2020 report—well after the December 1 close of fact discovery—to disclose that it would be relying on the Navini system as its principal prior art reference and that it would be relying on documents and other information provided by Mr. John Grabner, Navini's former VP of Engineering.

Given Dr. Andrews' heavy reliance on Mr. Grabner, General Access requested that Sprint produce Mr. Grabner for deposition and tendered a subpoena for documents to Sprint's counsel. Sprint's counsel refused to accept the subpoena on behalf of Mr. Grabner on the ground that it was served "after the close of fact discovery." Ex. K, 1/11/21 Email from Jason Cook to Glen Summers. Sprint also refused to collect and produce Mr. Grabner's documents regarding the Navini system because "Mr. Grabner [had] been on Sprint's Initial disclosures since October" and "the Navini prior art was disclosed to GAS with Sprint's invalidity contentions in May." Ex. K.

Sprint's excuses for refusing to produce relevant documents from Mr. Grabner cannot withstand scrutiny. In its October witness disclosures, Mr. Grabner was buried among *fifteen* party witnesses and *thirty-three* third party witnesses. Ex. L, 10/16/20, Sprint 2d. Supp. Disclosures. What's more, Mr. Grabner testified in deposition ███████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████ *id.* 32:2–15.

Sprint's selective production of cherry-picked documents from Mr. Grabner's archives of Navini materials failed to satisfy its discovery obligations. This Court's Discovery Order requires the parties to produce all relevant documents. Under the local rules, that includes all documents "relevant to any party's claim or defense" including "information that would not support the disclosing parties' contentions." Local Rule CV-26(d)(1). Given that Mr. Grabner is a paid consultant to Sprint, Sprint has presented no justification for producing only a handful of documents culled from Grabner's files while withholding the rest. And given Sprint's massive, constantly shifting invalidity contentions over the history of this litigation, it was no excuse for Sprint to claim that it was "too late" for General Access to seek Mr. Grabner's documents once Sprint revealed in its expert report that the Navini system (and specifically documents provided by

14

Mr. Grabner) would be at the heart of Sprint's invalidity defense at trial.

**Issue No. 9: Sprint Should Be Precluded from Attempting to Use Statements in General Access's Complaints as Admissions**

General Access filed both an original complaint and an amended complaint in this case. Consistent with the Federal Rules' liberal policy in favor of amendments, General Access altered or retracted many of its original allegations when it filed its amended complaint. General Access also addressed some of the same issues in subsequent pleadings and interrogatory responses. Sprint should be precluded from introducing statements in General Access's original complaint that are inconsistent with General Access's final complaint or other subsequent pleadings.

While "[a]llegations in [a] party's pleadings may constitute admissions in some situations …, one of two inconsistent pleas cannot be used as evidence in the trial of the other.'" *Gabarick v. Laurin Mar. (Am.), Inc.*, 406 F. App'x 883, 889 (5th Cir. 2010). "An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). Thus, where a party amends a prior complaint without incorporating it, the "second complaint is the only effective complaint" that can be used as evidence. *Id.*

Here, General Access retracted certain statements that were made in its original complaint, which had been filed over four years earlier. For example, the original complaint alleged that "[p]ursuant to relevant policies governing the standards organization, RAZE … agreed to license users of WiMAX technology on fair, reasonable, and non-discriminatory (FRAND) terms." Dkt. 1 ¶ 20. As explained above in the context of its motion relating to RAND obligations, Raze never proposed the invention of the '931 Patent for standardization by any standards organization, and was not involved in the development of any beamforming standards. As a result, General Access withdrew these allegations when it filed its amended complaint. That complaint supersedes the original complaint, so Sprint should not be permitted to rely on the original (withdrawn) allegations.

Dated:  July 14, 2021

Respectfully submitted,

BARTLIT BECK LLP


/s/ Glen E. Summers
Glen E. Summers (Lead Attorney)
      (Colorado Bar No. 30635)
Sean C. Grimsley (Colorado Bar No. 36422)
John M. Hughes (Colorado Bar No. 38295)
Nosson D. Knobloch (Colorado Bar No. 42134)
Bartlit Beck LLP
1801 Wewatta Street, Suite 1200
Denver, CO  80202
Telephone: (303) 592-3100
glen.summers@bartlitbeck.com
sean.grimsley@bartlitbeck.com
john.huges@bartlitbeck.com
nosson.knobloch@bartlitbeck.com

Benjamin R. Montague (IL Bar No. 6327341)
Bartlit Beck LLP
54 W Hubbard St., Suite 300
Chicago, IL 60654
Telephone: (312) 494-4400
benjamin.montague@bartlitbeck.com

Jennifer Parker Ainsworth
(Texas Bar No. 00784720)
Wilson, Robertson & Cornelius, P.C.
900 ESE Loop 323, Suite 400
Tyler, TX  75701
Telephone: (903) 509-5000
jainsworth@wilsonlawfirm.com

Jacob Brege (Michigan Bar No. P84415)
Brege PLLC
201 S. 1st St. Apt. 624
Ann Arbor, MI  48104
Telephone: (917) 734-7880
jbrege@bregepllc.com

*Attorneys for Plaintiff General Access Solutions, Ltd.*

16

## **CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that, pursuant to Local Rule CV-5(a)(7)(A), authorization for filing the foregoing pleading under seal has been conveyed through the Amended Protective Order (Dkt. No. 44) in place in this matter.

> /s/ Glen E. Summers
> *(with permission by Jennifer Parker Ainsworth)*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document was filed electronically UNDER SEAL and served by e-mail on July 14, 2021, to all counsel of record.

> /s/ Glen E. Summers
> *(with permission by Jennifer Parker Ainsworth)*

## **CERTIFICATE OF CONFERENCE**

I certify that Defendants General Access Solutions, Ltd., have complied with the requirements of Local Rule CV-7(h). This motion is opposed. Specifically, the parties held a telephonic meet and confer on July 12, 2021. Kate Dominguez attended on behalf of Defendant, among others. The parties were not able to come to agreement on the above motions, and as such, the meet and confer process ended in an impasse.

> /s/ Glen E. Summers
> *(with permission by Jennifer Parker Ainsworth)*