IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| GENERAL ACCESS SOLUTIONS, LTD., Plaintiff, <br><br> v. <br><br> SPRINT SPECTRUM LLC, SPRINTCOM, INC. and ASSURANCE WIRELESS USA, L.P. <br><br> Defendants. | Case No. 2:20-cv-00007 |

**JOINT FINAL PRE-TRIAL ORDER**

This cause came before the Court at a pre-trial management conference held on August 3, 2021,

pursuant to Local Rule CV-16 and Rule 16 of the Federal Rules of Civil Procedure.

**A.    COUNSEL FOR THE PARTIES**

**Plaintiff(s):**

Jennifer Parker Ainsworth (Texas Bar No. 00784720)
WILSON, ROBERTSON & CORNELIUS, P.C.
909 ESE Loop 323, Suite 400
Tyler, Texas 75701
Telephone: (903) 509-5000
jainsworth@wilsonlawfirm.com

Glen E. Summers (Lead Attorney)
        (Colorado Bar No. 30635)
Sean C. Grimsley (Colorado Bar No. 36422)
Nosson D. Knobloch (Colorado Bar No. 42134)
BARTLIT BECK LLP
1801 Wewatta Street, Suite 1200
Denver, CO 80202
Telephone: (303) 592-3100
glen.summers@bartlitbeck.com
sean.grimsley@bartlitbeck.com
nosson.knobloch@bartlitbeck.com

Benjamin R. Montague (IL Bar No. 6327341)
BARTLIT BECK LLP
54 W Hubbard St., Suite 300
Chicago, IL 60654
Telephone: (312) 494-4400
benjamin.montague@bartlitbeck.com

**Defendant(s):**

Robert W. Weber (SBN 21044800)
Smith Weber, LLP
5505 Plaza Drive—P.O. Box 6167
Texarkana, TX 75505-61671
(903) 223-5656
(903) 223-5652 – fax
bweber@smithweber.com

Jason W. Cook (SBN 24028537)
MCGUIRE WOODS LLP
2000 McKinney Avenue, Suite 1400
Dallas, TX 75201
(214) 932-6400
(214) 932-6496 – fax
jcook@mcguirewoods.com

Eric S. Schlichter
Texas State Bar No. 24007994
MCGUIREWOODS LLP
600 Travis Street, Suite 7500
Houston, TX 77002
Tel: (832) 255-6330
Fax: (832) 214-9930
eschlichter@mcguirewoods.com

Josh A. Krevitt (lead attorney) (NY Bar No. 2568228)
Brian A. Rosenthal (NY Bar No. 3961380)
Katherine Dominguez (NY Bar No. 4741237)
Jaysen S. Chung (CA Bar No. 280708)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, NY 10166
(212) 351-4000
(212) 351-4035 – fax
jkrevitt@gibsondunn.com
brosenthal@gibsondunn.com
kdominguez@gibsondunn.com
jschung@gibsondunn.com

David E. Finkelson (pro hac vice)
George B. Davis (VA Bar No. 83165)
MCGUIRE WOODS LLP
800 East Canal Street
Richmond, VA 23219-3916
(804) 775-1000
(804) 698-2016 – fax
dfinkelson@mcguirewoods.com
gdavis@mcguirewoods.com

**B.    STATEMENT OF JURISDICTION**

This is an action under the patent laws of the United States, 35 U.S.C. § 271, et. seq.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b), (c), (d) and 1400(b), although Sprint has denied that this District is the most convenient forum for this action. Sprint does not deny that it is subject to personal jurisdiction in this Court. Sprint has not sought transfer to a different forum.

The defendants do not dispute jurisdiction for the purpose of this action.

C.    NATURE OF ACTION

**General Access's Statement**

This is an action for patent infringement. Plaintiff General Access Solutions, Ltd. ("General Access") contends that Defendants Sprint Spectrum LLC, SprintCom, Inc., and Assurance Wireless USA, L.P. (collectively, "Defendants" or "Sprint") directly infringe claims 28 and 29 of U.S. Patent No. 7,230,931 ("the '931 Patent), entitled "Wireless Access System Using Selectively Adaptable Beamforming in TDD Frames and Method of Operation." General Access further contends that Sprint's infringement was willful and seeks monetary damages for Sprint's infringement.

The '931 Patent was filed on September 5, 2001 and was issued on June 12, 2007. The named inventor is Paul Struhsaker. The '931 Patent is entitled to a priority date of December 31, 2000, based on the date of conception and Mr. Struhsaker's subsequent diligent reduction to practice. General Access is the owner by assignment of all right, title, and interest in the '931 Patent, including the right to recover past and future damages.

The '931 Patent relates to the use of "beamforming" in conjunction with Time Division Duplexing ("TDD") in a cellular network.  Beamforming is a technology by which beams of radio frequency energy are directed by base station antennas to specific areas of the cell. The asserted claims involve transmitting a "broadcast beam signal" to wireless access devices within multiple sectors at the start of a TDD frame, and then subsequently transmitting multiple "directed scanning beam signals" during the same downlink portion of a TDD frame, each of which carries downlink data traffic to substantially only wireless access devices in its associated sector.

Sprint's 4G LTE cellular network infringes the asserted claims when it uses one of several beamforming "Transmission Modes"—namely, Transmission Modes 7, 8, and 9. The use of the claimed invention in connection with these Transmission Modes has added substantial value to Sprint's LTE network, as the asserted claims enable Sprint to achieve significant throughput gains, as

well as gains in coverage, speed, and capacity. Sprint's infringement has been willful. Sprint has known for a long time that its use of Transmission Modes 7, 8, and 9 infringes the Asserted Claims and that it has no legitimate non-infringement or invalidity defenses. General Access seeks a reasonable royalty for infringement occurring between May 2, 2010 and the trial date, as well as post-verdict royalties, pre-judgment and post-judgment interest, and enhanced damages for willful infringement. It also seeks costs and attorney's fees pursuant to 35 U.S.C. § 285.

### Sprint's Statement

General Access's patent infringement allegations, and all related allegations, are meritless. Sprint does not infringe claims 28 and 29 of the '931 patent (the "asserted claims"). Nor was Sprint's alleged infringement willful. The asserted claims are not patent-eligible under 35 U.S.C. § 101. The claims also are invalid, as they would have been obvious under 35 U.S.C. § 103, and fail to meet the enablement and written description requirements of 35 U.S.C. § 112. General Access is not entitled to a priority date earlier than September 5, 2001, which is the filing date of the '931 patent. The claims are also unenforceable due to General Access's unclean hands. Thus, General Access is not entitled to any relief. General Access is not entitled to enhanced damages, and this is not an exceptional case under which General Access would be entitled to attorneys' fees and costs. To the contrary, Sprint is entitled to attorneys' fees under 35 U.S.C. § 285, costs, and any other relief that the Court finds appropriate.

### D.     CONTENTIONS OF THE PARTIES

The parties provide the following statements of contentions without waiver of any claims or defenses, responses given during discovery, or opinions expressed by their experts. By providing these contentions, the parties do not waive any motions *in limine*, motions for summary judgment, *Daubert* motions, motions to strike, or any other relevant motion.

**General Access's Contentions**

1.      Sprint infringes claims 28 and 29 of the '931 Patent by utilizing Transmission Modes 7, 8, and 9 and/or by utilizing equipment capable of Transmission Modes 7, 8, and 9 in connection with its 4G LTE network.

2.      General Access is the assignee of the '931 Patent.  General Access, as the legal owner of the '931 Patent, holds the right to recover all damages sought in this action for Sprint's infringement.

3.      General Access is entitled to recover pre-verdict damages in the form of a reasonable royalty for Sprint's infringement of the '931 Patent. General Access is also entitled to an ongoing royalty in lieu of an injunction, pre-judgment and post-judgment interest, costs, and attorney's fees as provided by 35 U.S.C. §§ 284–285. Finally, Sprint's infringement is willful, and General Access is entitled to enhancement of any damages awarded for Sprint's infringement pursuant to § 284.

4.      Sprint's defenses are without merit.

**Sprint's Contentions[1]**

1.      Sprint has not directly infringed either claim 28 or 29 of the '931 patent (the "asserted claims").

2.      Claims 1 and 19 of the '931 patent are invalid because each claim's subject matter was known, publicly disclosed, and conventional prior to the filing date of the '931 patent.

3.      The asserted claims of the '931 patent are not patent-eligible under 35 U.S.C. § 101.

---

[1] Sprint proposed in Section E below the two following facts as uncontested, but General Access did not agree:

General Access conceded that claims 1 and 19 of the '931 patent are invalid because their subject matter was known in the art before the filing of the '931 patent.

Claims 1 and 19 of the '931 patent are invalid because their subject matter was known in the art before the filing of the '931 patent.

4.      The asserted claims of the '931 patent are invalid as obvious under 35 U.S.C. § 103.

5.      The asserted claims of the '931 patent are invalid for lack of written description under 35 U.S.C. § 112.

6.      The asserted claims of the '931 patent are invalid for lack of enablement under 35 U.S.C. § 112.

7.      General Access is not entitled to a priority date earlier than September 5, 2001, which is the filing date of the '931 patent.

8.      The Navini Ripwave System is prior art to the asserted claims of the '931 patent under at least 35 U.S.C. §§ 102(a).

9.      U.S. Patent Publication No. 2002/0021684 (Toshimitsu) is prior art to the asserted claims of the '931 patent under at least 35 U.S.C. §§ 102(e).

10.     The asserted claims of the '931 patent are unenforceable due to General Access's unclean hands.

11.     General Access has not established that it is the sole assignee of the '931 Patent. General Access has not established that it is the sole legal owner of the '931 Patent, or that it holds the right to recover all damages sought in this action for Sprint's infringement.

12.     General Access has not been damaged by Sprint's alleged infringement.  General Access is not entitled to damages under any theory.  General Access also is not entitled to any pre-judgment or post-judgment interest.  General Access is not entitled to any relief.

13.     Sprint's alleged infringement of the asserted claims of the '931 patent has not been, and is not, willful.

14.     General Access is not entitled to enhanced damages under 35 U.S.C. § 284.

15.     General Access is not entitled to any attorneys' fees or costs under 35 U.S.C. § 285.

16.     Sprint is entitled to costs, expenses, and attorneys' fees under 35 U.S.C. § 285, and any other relief the Court finds appropriate.

17.     General Access's positions in this case are meritless.

**General Access's Rebuttal Contentions**

1.      Claims 28 and 29 of the '931 Patent are valid and enforceable.

2.      General Access did not concede in the IPR (or any other time) that the "subject matter" of Claims 1 or 19 "was known, publicly disclosed, and conventional prior to the filing date of the '931 patent."

3.      The Asserted Claims are patent-eligible under 35 U.S.C. § 101.

4.      Sprint has waived any right to assert a §101 defense.

5.      The Asserted Claims are not invalid as obvious under 35 U.S.C. § 103.

6.      The Asserted Claims are not invalid for lack of written description or enablement under 35 U.S.C. § 112.

7.      Sprint's obviousness defense is limited to obviousness in view of the Navini Ripwave System, either alone or in combination with U.S. Patent Publication No. 2002/0021684 by Toshimitsu.

8.      The Navini Ripwave System is not prior art to the '931 Patent.

9.      Sprint is estopped from relying on Toshimitsu.

10.     The '931 Patent is entitled to a priority date earlier than September 5, 2001.

11.     The asserted claims are enforceable and General Access does not have "unclean hands."

12.     Sprint has waived any right to assert an "unclean hands" defense.

13.     Sprint is not entitled to any costs, expenses, or attorneys' fees under 35 U.S.C. § 285. Sprint is not entitled to any relief.

14. Sprint has not timely sought a bench trial on any issues.

**Sprint's Rebuttal Contentions**

1. General Access conceded that claims 1 and 19 of the '931 patent are invalid, and thus that their subject matter was known in the art before the filing of the '931 patent.

2. Sprint has not waived its right to assert that claims 28 and 29 of the '931 patent are patent-ineligible under 35 U.S.C. § 101.

3. Sprint seeks a bench trial on the issue of whether claims 28 and 29 of the '931 patent are patent-ineligible under 35 U.S.C. § 101, if the Court determines that a bench trial is necessary to resolve this issue.

4. The Navini Ripwave System is prior art to the '931 patent.

5. Sprint is not estopped from relying on U.S. Patent Publication No. 2002/0021684 (Toshimitsu) for the purposes of demonstrating that claims 28 and 29 of the '931 patent were obvious, or for any other invalidity position.

6. Sprint has not waived its right to assert that the claims of the '931 patent are unenforceable due to General Access's unclean hands.

7. Sprint seeks a bench trial on the issue of whether the claims of the '931 patent are unenforceable due to General Access's unclean hands, if the Court determines that a bench trial is necessary to resolve this issue.

## E. STIPULATIONS AND UNCONTESTED FACTS

**Uncontested Facts**

1. Plaintiff General Access is a domestic limited partnership organized under the laws of the State of Texas with a place of business in Dallas, Texas.

2. Sprint Spectrum LLC is a Delaware limited liability company with a principal place of business in Bellevue, Washington.

3.      SprintCom Inc. is a Kansas corporation with a principal place of business in Bellevue, Washington.

4.      Assurance Wireless USA, L.P. is a Delaware limited partnership with a principal place of business in Bellevue, Washington.

5.      The application that issued as the '931 Patent was filed on September 5, 2001.

6.      The United States Patent and Trademark Office issued the '931 Patent on June 12, 2007.

7.      Paul Struhsaker is the sole named inventor of the '931 Patent.

8.      Raze Technologies, Inc. was the initial assignee of the '931 Patent.

9.      General Access filed this action on April 30, 2016.

**Additional Trial Procedure Stipulations**

1.      Each party may use an exhibit that is listed on the other party's exhibit list, to the same effect as though it were listed on its own exhibit list, subject to evidentiary objections.  Each party may equally use any exhibit once it is admitted.  A party's inclusion of an exhibit on its exhibit list does not waive any evidentiary or other objections to that exhibit if the opposing party attempts to offer it into evidence.

2.      The parties agree that any description of an exhibit on an exhibit list is provided for convenience only and shall not be used as an admission by the applicable party, or otherwise as evidence regarding that exhibit.

3.      Legible photocopies of the '931 patent and its PTO file history may be offered as evidence in lieu of certified copies thereof.

4.      Legible photocopies of documents may be offered and received in evidence in lieu of originals thereof, subject to all foundational requirements, other possible objections to the

admissibility of originals, and the right of the party against which it is offered to inspect an original upon reasonable request before any proposed use of the photocopy.

5.      Any physical exhibits that are identified on a party's exhibit list may be inspected by the other party the night before their intended use.

6.      The parties agree that the demonstrative exhibits the parties intend to use at trial do not need to be included on their respective trial exhibit lists, which are attached as Exhibits E and F to this Order.

**Sprint's Proposed Additional Trial Procedure Stipulations**

7.      **General Access Statement:**  Sprint proposed a number of trial procedure stipulations the night before the pretrial order was due. The parties have not met and conferred on these issues. General Access proposed that the parties meet and confer on these issues and address them in a supplemental stipulation to be filed after completing that meet and confer process. Sprint has insisted on including its additional proposed procedures here. By not joining Sprint's proposals now, General Access does not mean to indicate that it is necessarily opposed to Sprint's proposals. It merely has not had the opportunity to consider or discuss them.

8.      **Sprint Statement:**  General Access sent Sprint a proposed joint final pre-trial order for the first time on Saturday, July 17, 2021 (three days before the deadline for filing this proposed order), with no proposed trial procedure stipulations at all.  Sprint therefore proposed trial procedure stipulations, including those above and the below proposals (to which General Access does not agree):

9.      The parties agree that any date listed on the exhibit list is not evidence or an admission of the exhibit's date.  The parties further agree that failing to list a date is not evidence or an admission of whether the document is dated.

10.     To the extent a physical exhibit is on a party's exhibit list and it is in the possession of the other party, and has been made available for inspection during discovery, the producing party must

bring that physical exhibit to trial so that it may be inspected and used at trial.The parties have agreed that each side will make the individuals who submitted expert reports in this case available to testify at trial.  Neither side needs to designate the deposition testimony of the other side's experts.  If any expert is unavailable for trial, however, the party submitting a report for that expert agrees that the other party may submit a late designation of that expert's deposition testimony.

11.    The parties agree that written answers to interrogatories, requests for admission, or stipulations in this case shall be treated as having been given under oath, whether or not the answers were signed or verified by the party making them.

## F.    CONTESTED ISSUES OF FACT AND LAW

The parties identify the following issues of fact and law that remain to be litigated.  To the extent any issue of law discussed below is deemed to be an issue of fact, it is expressly designated as such, and vice versa.  The parties do not waive any of their pending or anticipated motions, and each party incorporates by reference the contested issues raised in its respective pending motions.  The parties reserve the right to identify additional factual or legal issues that may arise, including issues raised in any motions *in limine*.

**General Access's Statement of Contested Issues**

1.    Whether Sprint infringes claim 28 or claim 29 of the '931 Patent.

2.    Whether claim 28 or claim 29 is invalid as obvious in view of the Navini Ripwave System, either alone or in combination with U.S. Patent Publication No. 2002/0021684 by Toshimitsu.

3.    Whether claim 28 or claim 29 is invalid for lack of written description or enablement under 35 U.S.C. § 112.

4.    If Sprint infringes claim 28 or claim 29, the amount of damages to which General Access is entitled.

5.      If Sprint infringes claim 28 or claim 29, whether Sprint's infringement was willful.

6.      If Sprint is found to have willfully infringed the '931 Patent, whether the Court should enhance damages under 35 U.S.C. § 284 and, if it does, the extent of that increase.

7.      Whether this is an exceptional case under 35 U.S.C. § 285.

8.      If this is an exceptional case under 35 U.S.C. § 285, whether attorneys' fees should be awarded to General Access and, if so, in what amount.

9.      Whether the '931 Patent is entitled to a priority date earlier than September 5, 2001.

10.      Whether Sprint has waived its §101 and/or unclean hands defenses.[2]

11.      Whether the Asserted Claims are patent eligible under 35 U.S.C. § 101.

12.      Whether the Asserted Claims of the '931 Patent are enforceable under the doctrine of "unclean hands."

13.      Whether Sprint has timely sought a bench trial on any issues.

**Sprint's Statement of Contested Issues**

1.      Whether Sprint has directly infringed claims 28 or 29 of the '931 patent (the "asserted claims").

2.      Whether the asserted claims of the '931 patent are patent-ineligible under 35 U.S.C. § 101.[3]

---

[2] General Access objects to Sprint's inclusion of extensive argumentation in footnotes, below, concerning the issues of its §101 and unclean hands defenses. General Access contends that Sprint has waived these issues and that they are utterly lacking in merit.

[3] "Patent eligibility under § 101 is a question of law that may involve underlying questions of fact." *Free Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355, 1361 (Fed. Cir. 2021).  Sprint contends that the "threshold" legal issue of patent eligibility, *Bilski v. Kappos*, 561 U.S. 593, 602 (2010), including any underlying questions of fact, is for the Court to decide based on a legal analysis of the claims. *See, e.g., Diamond* v. *Diehr*, 450 U.S. 175, 192–93 (1981) (holding claims eligible because "we do not view [them] as an attempt to patent a mathematical formula, but rather to be drawn to an industrial process for the molding of rubber products"); *Bilski*, 561 U.S. at 609 ("[T]he Court resolves this case narrowly on the basis of this Court's decisions in *Benson*, *Flook*, and *Diehr*, which show that petitioners' claims

3.      Whether the asserted claims of the '931 patent are invalid as obvious under 35 U.S.C. § 103.

4.      Whether the asserted claims of the '931 patent are invalid for lack of written description under 35 U.S.C. § 112.

5.      Whether the asserted claims of the '931 patent are invalid for lack of enablement under 35 U.S.C. § 112.

6.      Whether General Access is entitled to a priority date of September 5, 2001 or December 31, 2000 for the '931 patent.

7.      Whether the asserted claims of the '931 patent are unenforceable due to General Access's unclean hands.[4]

---

. . . are attempts to patent abstract ideas."). The Supreme Court has repeatedly and consistently held that patent eligibility is a question of law for the courts, and not a factual question for the jury. *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014) ("*we* determine whether the claims at issue are directed to [a] patent-ineligible concept[]," and "*we* . . . determine whether the additional elements transform the nature of the claim into a patent-eligible application") (emphases added); *see also Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. 66, 72 (2012) ("*We* must determine whether the claimed processes have transformed these unpatentable natural laws into patent-eligible applications of those laws.") (emphasis added); *Diamond v. Diehr*, 450 U.S. 175, 192–93 (1981) (holding claims eligible because "*we* do not view [the claims] as an attempt to patent a mathematical formula, but rather to be drawn to an industrial process for the molding of rubber products") (emphasis added); *Parker v. Flook*, 437 U.S. 584, 594–95 (noting "*our* conclusion" that "respondent's application contains no claim of patentable invention") (emphasis added). The Supreme Court has not once even suggested that this patent-eligibility inquiry involves factual questions to be decided by the jury; rather, courts must decide *both steps* of eligibility as a question of law. Nevertheless, if this Court determines that the jury should decide any factual questions underlying the patent-eligibility inquiry, i.e., whether the elements of the asserted '931 patent claims were well understood, routine, and conventional, Sprint will propose applicable jury instructions and verdict form questions. Consistent with the Docket Control Order (Dkt. 278), Sprint will concurrently file its Proposed Findings of Fact and Conclusions of Law for this issue.

[4] Sprint contends that the Court should decide the legal issue of whether GAS has unclean hands, including any underlying factual questions. *See, e.g., Gilead Sciences, Inc. v. Merck & Co., Inc.*, 888 F.3d 1231, 1239 (Fed. Cir. 2018) (affirming the district court's determination, after a jury trial, that the patentee had unclean hands); *Pei-Herng Hor v. Ching-Wu Chu*, 699 F.3d 1331, 1337 (Fed. Cir. 2012) ("Unclean hands is an equitable defense within the sound discretion of the district court."). Consistent

8.      Whether Sprint has waived the argument that the asserted claims of the '931 patent are patent-ineligible under 35 U.S.C. § 101.

9.      Whether Sprint has waived the argument that the asserted claims of the '931 patent are unenforceable due to General Access's unclean hands.

10.     Whether Sprint has timely sought a bench trial on the issue of whether the asserted claims of the '931 patent are patent-ineligible under 35 U.S.C. § 101.

11.     Whether Sprint has timely sought a bench trial on the issue of whether the asserted claims of the '931 patent are unenforceable due to General Access's unclean hands.

12.     If infringement is found for either of the asserted claims of the '931 patent, whether Sprint's alleged infringement of the asserted claims of the '931 patent was willful.

13.     If infringement is found for either of the asserted claims of the '931 patent and the claims are found to be not ineligible under 35 U.S.C. § 101 or invalid, the amount of any damages to which General Access is entitled from Sprint.

14.     If Sprint is found to have willfully infringed the asserted claims of the '931 patent and the claims are found to be not ineligible under 35 U.S.C. § 101 or invalid, whether General Access is entitled to enhanced damages under 35 U.S.C. § 284 and, if so, in what amount.

15.     If infringement is found for either of the asserted claims of the '931 patent and the claims are found to be not ineligible under 35 U.S.C. § 101 or invalid, whether General Access is entitled to pre-judgment or post-judgment interest and, if so, in what amount.

16.     Whether General Access is entitled to its costs, expenses, and attorneys' fees pursuant to 35 U.S.C. § 285.

---

with the Docket Control Order (Dkt. 278), Sprint will concurrently file its Proposed Findings of Fact and Conclusions of Law for this issue.

17.     Whether Sprint is entitled to its costs, expenses, and attorneys' fees pursuant to 35 U.S.C. § 285.

**G.     LIST OF WITNESSES**

1.     General Access's trial witness list is attached as Exhibit A.

2.     Sprint's objections and/or reservation of rights with regard to General Access's trial witness list is attached as Exhibit B.

3.     Sprint's trial witness list is attached as Exhibit C.

4.     General Access's objections and/or reservation of rights with regard to Sprint's trial witness list is attached as Exhibit D.

5.     General Access objects to Sprint's inclusion of an obviously unrealistic number of witnesses on its trial witness list. Sprint's current trial witness list includes 7 will call witnesses, 21 may call witnesses, and 4 may but probably will not call witnesses. Considering that trial is anticipated to last only 5 days, Sprint cannot reasonably expect to call this many witnesses. General Access has requested that Sprint immediately reduce the number of witnesses on its list. General Access has also requested that, per the parties' agreement, Sprint promptly identify the Sprint or T-Mobile employees it intends to call at trial who have not yet been deposed, so that General Access may depose them before trial.

**H.     LIST OF EXHIBITS**

1.     General Access's list of trial exhibits and a code for Sprint's objections are attached as Exhibit E.

2.     Sprint's list of trial exhibits and a code for General Access's objections are attached as Exhibit F.

3.      General Access objects that Sprint's exhibit list currently includes approximately 250 more exhibits than is permitted under the Docket Control Order. General Access has requested that Sprint immediately reduce the number of exhibits on its list.

4.      Sprint notes that General Access's exhibit list currently includes over 100 exhibits more than is permitted under the Docket Control Order.  Sprint has proposed that the parties agree to substantially reduce their respective exhibit lists by the date of the pretrial conference.

## I.      DEPOSITION DESIGNATIONS

1.      General Access's deposition designations, along with respective rebuttal designations and objections, are attached as Exhibit G.

2.      Sprint's deposition designations, along with respective rebuttal designations and objections, are attached as Exhibit H.

3.      The parties may exchange designations for the additional depositions the Court ordered in its Order on General Access's Motion to Strike Sprint's Reliance on Damages Information Produced After the Close of Fact Discovery. Dkt. 291. If they do so, the parties will submit a supplemental pretrial order with these designations and objections.

## J.      LIST OF ANY PENDING MOTIONS

1.      General Access's Motion to Strike Sprint's Non-Infringement Opinions Based on Its Erroneously Narrow and Untimely Proposed Construction of the Term "Sector" (Dkt. 155).

2.      General Access's Motion for Partial Summary Judgment of Validity on Grounds of IPR Estoppel (Dkt. 159).

3.      General Access's Motion for Partial Summary Judgment of Validity on the Grounds that the Asserted Navini System Is Not Prior Art to the '931 Patent (Dkt. 166).

4.      Sprint's Motion to Strike Doctrine of Equivalents Theory from the Expert Report of Dr. Vijay K. Madisetti (Dkt. 156).

5.      Sprint's Motion to Strike Mr. Kennedy's Supplemental Opinions Related to Sprint's License Agreements (Dkt. 158).

6.      Sprint's Motion for Summary Judgment of No Earlier Conception Date for the Asserted Claims (Dkt. 160).

7.      Sprint's Motion for Summary Judgment of Non-Infringement (Dkt. 161).

8.      Sprint's *Daubert* Motion to Exclude the Damages Opinions of Mr. David Kennedy (Dkt. 163).

9.      Sprint's Motion for Summary Judgment of No Pre-Suit Willful Infringement (Dkt. 164).

10.     Per the Court's Order, Dkt. 315, General Access will be filing a Renewed Motion to Strike Sprint's Reliance on Damages Information Produced After the Close of Fact Discovery on Wednesday, July 21, 2021.

11.     Sprint will be filing a Motion to Strike the July 16, 2021 Supplemental Expert Report of Dr. Vijay K. Madisetti re Technical Benefits of the Asserted Claims.[5]

## K.      PROBABLE LENGTH OF TRIAL

The probable length of trial is 5 days.

General Access requests 13 hours per side for direct, cross, and rebuttal examination.  General Access further requests 30 minutes per side for voir dire sessions, 40 minutes per side for opening statements, and 45 minutes per side for closing arguments.

---

[5] General Access notes that Sprint has not met and conferred with General Access about this motion. General Access objects to Sprint notifying the Court of this motion without first informing General Access of the basis for its motion, discussing the proposed briefing schedule, or making any effort to determine whether the parties can reach agreement on any disputed issues without resorting to motion practice.

Sprint requests 25 hours per side for direct, cross, and rebuttal examination.  Sprint further requests 45 minutes per side per voir dire session, 60 minutes per side for opening statements, and 60 minutes per side for closing arguments.

**L.   MANAGEMENT CONFERENCE LIMITATIONS**

[None at this time.]

**M.   TRIAL MANAGEMENT PROCEDURES**

1.   **Witnesses.**  The parties will identify by email to the opposing parties the witnesses they intend to call and the order by which they expect to call the witnesses by 7:30 p.m. [**SPRINT'S PROPOSAL:**  two calendar days; **GENERAL ACCESS'S PROPOSAL:**  the night] before the witnesses will be called to testify.  The identification of the witnesses shall include both live witnesses and witnesses whose testimony is provided by deposition.

2.   **Deposition Designations.**  Unless otherwise agreed between the parties, the party offering deposition testimony (other than for impeachment purposes) shall identify the deposition testimony to be offered from previously exchanged designations by 7:30 p.m. at least two calendar days prior to the testimony being offered into the record.  The party receiving the designations shall inform the opposing party of any counter-designations and objections by 7:30 p.m. the calendar day prior to the testimony being offered into the record, and the parties will meet and confer by 9:30 p.m. that same day.  If good faith efforts to resolve the objections fail, the party objecting to the testimony by deposition shall bring its objections to the Court's attention at the beginning of the following trial day.  If a party designates deposition testimony, and the other party counter-designates, then the designations and counter-designations will be read or played together in chronological order unless another order is agreed to by the parties or ordered by the Court.

3.   **Exhibits.**  Each party will provide a list of trial exhibits to be used in connection with direct examination by 7:30 p.m. the night before their intended use, and the receiving party will provide

its list of objections no later than 8:30 p.m. the night before their intended use.  The parties will meet and confer regarding any objections to those exhibits by 9:30 p.m. that same night.  If good-faith efforts to resolve the objections fail, the party objecting to the exhibits shall bring its objections to the Court's attention at the beginning of the following trial day.

4.     The parties' exhibit lists include exhibits that may not necessarily be introduced into evidence.  Each party reserves the right to add additional exhibits to its exhibit list, for good cause shown, by agreement of the parties, or as ordered by the Court.

5.     The parties agree to exchange lists of "Admitted Exhibits" by 10:00 p.m. the night before the lists are to be submitted to the Court.

6.     **Closing Statements.**  Absent further agreement of the parties, the parties need not exchange demonstratives used for closing statements.

## N.   SPRINT'S ADDITIONAL PROPOSED TRIAL MANAGEMENT PROCEDURES

1.     **General Access Statement:**   Sprint proposed a number of trial management procedures the night before the pretrial order was due. The parties have not met and conferred on these issues.  General Access proposed that the parties meet and confer on these issues and address them in a supplemental stipulation to be filed after completing that meet and confer process. Sprint has insisted on including its additional proposed procedures here. By not joining Sprint's proposals now, General Access does not mean to indicate that it is necessarily opposed to Sprint's proposals. It merely has not had the opportunity to consider or discuss them.

2.     **Sprint Statement:**  General Access sent Sprint a proposed joint final pre-trial order for the first time on Saturday, July 17, 2021 (three days before the deadline for filing this proposed order), with no proposed trial management procedures at all.  Thus, Sprint proposed trial management procedures, including those in Section M above as well as the proposals listed below (to which General Access does not agree):

3.      **Witnesses** (to be added to the end of the Section M(1) above):  For instance, if the party expects to conduct the examination on Monday, notice should be given to the opposing party by 7:30 p.m. on Saturday.  Each party shall update its list of expected witnesses for the following day by 7:30 p.m. at the end of each trial day, so long as the party has remaining witnesses that it intends to call on direct for that portion of the case.  Along with its list of expected witnesses, each party shall indicate whether it intends to call additional witnesses or expects to present additional evidence before resting.  The parties will cooperate in good faith to keep the other side informed of the anticipated length of the questioning (both direct and cross) of each witness.

4.      **Deposition Designations** (to be added to Section M(2) above):

(1)  A party may choose not to introduce deposition testimony as designated in connection with the relevant exhibits to this Order, but may not designate additional deposition testimony after the filing of this Order absent a showing of good cause (e.g., a witness previously expected to testify live becomes unavailable, responding to testimony that presents unfair surprise or prejudice).

(2)  Regardless of whether deposition testimony is read or played by video, the time available for each party's trial presentation shall be reduced by the length of its designations and counter-designations.

5.      **Exhibits** (to be added to Section M(3) above):  Failure to comply with these procedures, absent an agreement by the parties, will result in waiver of an exhibit or waiver of an objection to the exhibit.

6.      **Demonstratives:**  Demonstratives to be used in connection with direct examination will be exchanged by 7:30 p.m. the night before their intended use, with an agreement that any changes to the demonstratives made after the exchange will be only in font, layout, format, etc., to correct typographical errors and not edits of substance, unless made in response to and for the purpose of

resolving an objection.  The party seeking to use a demonstrative other than a physical demonstrative shall provide a color representation of the demonstrative in PDF format or digital interactive format (e.g., flash format, PPT, MPG, or other video format) for videos and animations.  The party seeking to use a physical demonstrative shall make that demonstrative available for inspection at the time of its identification.  The receiving party will provide its list of objections to any demonstratives no later than 8:30 p.m. the night before the demonstratives' intended use.  Demonstratives containing only trial exhibits, including with highlights, callouts, etc., need not be exchanged provided that the demonstrative is not argumentative.  Demonstratives created during testimony or demonstratives used in connection with cross-examination need not be exchanged.  The parties will meet and confer regarding any objections to those demonstratives by 9:30 p.m. that same night.  If good faith efforts to resolve the objections fail, the party objecting to the demonstratives shall bring its objections to the Court's attention at the beginning of the following trial day.]

7.      **Opening Statements:**  With respect to materials (exhibits and demonstratives, as defined above) to be used in connection with opening statements, the parties agree to a preliminary exchange of the materials no later than 6:00 p.m. on the evening before jury selection.  The receiving party will provide its list of objections no later than 8:30 p.m.  The parties will meet and confer regarding any objections to those exhibits by 9:30 p.m. that same night.  If good-faith efforts to resolve the objections fail, the party objecting to the exhibits shall bring its objections to the Court's attention at the beginning of the following trial day.  The parties agree that any changes to these materials made after 6:00 p.m. on the evening before jury selection will be non-substantive (e.g., edits to font, layout, format, or to correct typographical errors), unless made in response to and for the purpose of resolving an objection.

8.      **Notice of Intention to Rest:**  By 6:30 p.m. the night before it intends to rest its case, the resting party shall give the other party notice of its intention to rest.  This notice is intended so that the parties have an opportunity to comply with the other provisions of this Order.

## O.   CERTIFICATIONS

The undersigned counsel for each of the parties in this action does hereby certify and acknowledge the following:

1.      Full and complete disclosure has been made in accordance with the Federal Rules of Civil Procedure and the Court's orders;

2.      Discovery limitations set forth in the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders have been complied with;

3.      Each exhibit in the List of Exhibits herein:

   a.      is in existence;

   b.      is numbered; and

   c.      has been disclosed and shown to opposing counsel.

Approved as to form and substance:


Attorneys for Plaintiff(s):      */s/ Glen E. Summers* _____


Attorneys for Defendant(s):      */s/ Brian A. Rosenthal (with permission)* _____


(Note: An attorney of record may sign and certify this order on behalf of opposing counsel "with permission.")

(Note:  Where additional parties are joined or intervene pursuant to Rules 14, 19 and 24 of the Federal Rules of Civil Procedure, the style of the case and the various sections of the pre-trial order should be modified to reflect the additional parties and information pertaining to them.)