IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| GENERAL ACCESS SOLUTIONS, LTD., | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 2:20-CV-00007-RWS |
| v. | § § § | |
| SPRINT SPECTRUM LLC, SPRINTCOM, INC, ASSURANCE WIRELESS USA, L.P., | § § § § | |
| Defendants. | § § | |

# ORDER

Before the Court is Sprint's Motion for Summary Judgment of No Pre-Suit Willful Infringement. Docket No. 164. While the Court heard argument on several motions at the dispositive motions hearing on June 17, 2021, the parties rested on the briefing with regard to this matter. Having considered the briefing, the Court believes that Sprint's motion should be **GRANTED**.

## BACKGROUND

On September 5, 2001, Paul Struhsaker submitted the application for U.S. Patent No. 7,230,931 (the "'931 Patent") on Raze's behalf. Docket No. 164-3 at 1. The '931 Patent issued on June 12, 2007. *Id.*

In September 2011, General Access executed a Patent Brokerage Agreement with RSL Holdings. Inc. in an attempt to sell General Access's patent portfolio. Docket No. 164-9. Francis Rushford executed the Agreement on behalf of RSL as RSL's then-Managing Director. *Id.* at 9; *see also* Docket No. 164-10 at 32:6–12, 33:12–21. Mr. Rushford testified that as part of RSL's brokerage services, it prepared "teaser" materials that it sent to potential buyers of General

Access's patent portfolio, including Sprint. Docket No. 164-10 at 62:6–63:20, 64:10–19; Docket No. 164-11.

Although RSL sent teaser materials to Sprint in 2012, those materials included no patent numbers, allegations of infringement or claim charts, and RSL would not have disclosed any patent numbers to Sprint without General Access's permission unless Sprint signed a nondisclosure agreement with RSL protecting General Access against a declaratory judgment action. Docket No. 164-10 at 57:6–13, 59:5–17, 61:3–25; Docket No. 164-9 at 2, § III(3)(vi) (requiring RSL to "notify Seller [General Access] in writing prior to presentation of the specific Patent identifying numbers to any Potential Purchaser that has not signed a confidentiality agreement with language protecting Seller against a declaratory judgment action"). There was no evidence produced in this matter that Sprint ever signed such an agreement.

Raze also interacted with Sprint and Clearwire in 2001 and 2002.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In determining whether a genuine issue for trial exists, a court views all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. v. Zenith Radio*, 471 U.S. 574, 587 (1986). The moving party bears "the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

Once a party has made that showing, the nonmoving party bears the burden of establishing otherwise by supporting its contentions with some evidence. *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990) (citing *Celotex*, 477 U.S. at 324).

## DISCUSSION

Sprint argues that General Access has adduced no evidence that Sprint had any knowledge of the '931 Patent post-issuance until the filing of this lawsuit. Docket No. 164 at 11. While RSL sent teaser materials to Sprint in 2012 generally describing General Access's patent portfolio, the materials did not include any patent numbers. *Id.* (citing Docket No. 164-10 at 61:3–25). Sprint asserts that RSL's brokerage agreement with General Access prohibited RSL from disclosing specific patent numbers to prospective buyers without General Access's permission, unless the buyers signed a nondisclosure agreement with RSL. *Id.* (citing Docket No. 164-9 at 2, § III(3)(vi); Docket No. 164-10 at 57:6–13, 59:5–17). Sprint asserts that there is no evidence that Sprint ever signed such an agreement. *Id.* (citing Docket No. 164-10 at 72:5–73:23). And General Access has not identified any evidence that RSL disclosed the '931 Patent to Sprint despite its obligations under the brokerage agreement. Further, Sprint asserts that General Access has not provided any evidence that Sprint obtained knowledge of the '931 Patent on its own. *Id.* (citing *Intellectual Pixels Ltd. v. Sony Interactive Entm't LLC*, No. SACV 20-1422-JVS, 2020 WL 7872961, at *3 (C.D. Cal. Nov. 20, 2020) (granting motion to dismiss willful infringement claim despite the patentee's conclusory allegation that the alleged infringer monitored the relevant patent application)).

Sprint also argues that there is no evidence that General Access ever disclosed the '931 Patent Application to either Sprint or its predecessor-in-interest Clearwire. *Id.* at 12. While General Access cites to nondisclosure agreements, communications and discussions between Raze

and Sprint and Raze and Clearwire to speculate that Raze would have disclosed the '931 Patent Application to Sprint, Sprint argues that the documents do not support that conclusion.

First, as to Sprint, the product presentation (which was not produced) given to Sprint occurred before the patent application was filed. *Id.* at 6–7 (citing Docket No. 164-14 at 1 (weekly sales and marketing reports dated February 9, 2001, and March 16, 2001, and bearing Bates numbers GA0005285 and GA0005291 that state the presentation had been planned for March 19, 2001); Docket No. 164-7 at 5 (citing GA0005285 and GA0005291)). Second, the documents between Raze and Sprint cited by General Access also do not indicate that Raze disclosed any patents, patent applications or patent-identifying information. *Id.* at 7 (citing Docket No. 164-7 at 5 (citing GA0039813, GA0012191 and GA0014128); Docket No. 164-15 (weekly report, dated September 17–21, 2001, and bearing the Bates number GA0012191); Docket No. 164-16 (weekly sales and marketing report, dated September 21, 2001, and bearing the Bates number GA0014128); Docket No. 164-17 (weekly report, dated January 18, 2002, and bearing the Bates number GA0039813)). Third, neither General Access's fact witnesses nor its corporate witness on this topic were personally aware of any discussions with Sprint that included patent applications. *Id.* (citing Docket No. 164-18 at 200:15–202:12; Docket No. 164-19 at 124:13–17, 180:17–25; Docket No. 164-20 at 21 (listing as topic 43 of Sprint's Rule 30(b)(6) Notice to General Access: "Any pre-suit notice of the Asserted Patent provided to Sprint by or on behalf of [General Access] or Raze"); Docket No. 164-21 at 24:13–18, 112:24–113:6, 115:1–8).

And, while Raze and Clearwire engaged in discussions around 2001 regarding Raze's SkyFire technology, Sprint asserts that this technology did not even include beamforming. *Id.* at 8 (citing Docket No. 164-27 (describing June 2001 meeting between Raze employees and Clearwire representatives); Docket No. 164-28 (meeting notes from October 2001 between Raze

and Clearwire to discuss upcoming field trial of "SkyFire" system); Docket No. 164-29 (unexecuted "SkyFire Field Trial Agreement" between Raze and Clearwire); Docket No. 164-30 at 53 (stating in July 2001 responses to Clearwire that beamforming would be a future improvement to the SkyFire system)). But none of Raze's alleged disclosures to Clearwire cited by General Access mentioned the '931 Patent or the '931 Patent Application. *Id.* at 9 (citing Docket No. 164-7 at 5 (citing disclosures that Raze allegedly made to Clearwire bearing Bates numbers GA0004639, GA0032712 and GA0037651); Docket No. 164-30 at 53 (Raze responses to Clearwire's request for information, dated July 6, 2001, and bearing Bates number GA0004639, describing beamforming only in general terms); Docket No. 164-31 at 48 (draft Raze responses to Clearwire's request for information, dated July 6, 2001, and bearing the Bates number GA0032712, describing beamforming as an "evolving" technology); Docket Nos. 164-32, 164-33 (presentation titled "Company and Product Overview Clearwire" and bearing Bates number GA0037651 that includes no mention of SkyBeam, beamforming or any patents)). The emails between Raze and Clearwire cited by General Access also included no discussion of patents. *Id.* (citing Docket No. 164-7 at 5 (citing GA0002051 and GA0002063); Docket No. 164-34 (May 4, 2001 email exchange bearing Bates number GA0002051 between representatives of Raze and Clearwire in which the representatives discussed the terms of the parties' NDA and an upcoming meeting, with no indication that the meeting would include discussions of patents); Docket No. 164-35 (May 16, 2001 email bearing Bates number GA0002063 from Clearwire's Bryan Olivier to Raze employees requesting a meeting to discuss Raze's "hardware and potential applications in o[u]r future market builds")). General Access's witnesses again could not recall the disclosure of the patent application. *Id.* at 10 (citing Docket No. 164-18 at 200:5–14; Docket No. 164-19 at 124:2–11; Docket No. 164-21 at 145:24–146:15).

Moreover, Sprint argues that it is well established that disclosure of a patent application alone cannot support a claim for willful infringement of the later-issued patent. *Id.* (citing *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) (reversing a finding of willful infringement based on the defendant's knowledge of patent applications, reasoning that "[f]iling an application is no guarantee any patent will issue and a very substantial percentage of applications never result in patents. What the scope of claims in patents that do issue will be is something totally unforeseeable"); *Maxell Ltd. v. Apple Inc.*, No. 5:19-cv-36-RWS, 2019 WL 7905455, at *5 (E.D. Tex. Oct. 23, 2019) ("Knowledge of a patent application alone is insufficient to demonstrate knowledge of the later issued patent." (citations omitted))). Sprint argues that this is particularly true here, as the asserted claims of the issued patent did not even exist at the time of the alleged disclosure: it was not until May 2006 that claims 28 and 29 were presented to the Patent Office. *Id.*

Sprint further argues that Raze's alleged disclosure to Sprint or Clearwire of beamforming technology fails to establish Sprint's pre-suit knowledge of the '931 Patent. *Id.* at 13. Sprint argues that General Access's disclosure of its beamforming technology does not impute knowledge of any patents or patent applications claiming that technology, especially when, as here, the disclosure comprised only generic descriptions of the technology. *Id.* (citing Docket Nos. 164-30–164-33); *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1308–09 (Fed. Cir. 2019)). Further, Sprint argues, General Access's reliance on general discussions of beamforming is misplaced considering its own expert's testimony that beamforming was known prior to the '931 Patent Application and the fact that the independent claims of the '931 Patent reciting certain beamforming techniques were admitted by General Access to be invalid over the prior art in IPR. *Id.*

General Access responds that a reasonable jury could conclude that Sprint had pre-suit knowledge of the '931 Patent based on the totality of the circumstances. Docket No. 191 at 9. First, General Access points to evidence that Raze communicated with both Sprint and Clearwire in 2001 and 2002. *Id.* at 9, 11 (citing Docket No. 164-17 (noting discussions with Sprint in January 2002); Docket No. 164-17 at GA0012191 (weekly report dated September 17–21, 2001, mentioning that Sprint had asked for further information about Raze's technology)). General Access cites to NDAs signed between the companies and testimony from Mr. Struhsaker and Mr. Griffin that both companies would have received descriptions of the claimed invention and a list of patents and patent applications, as well as a white paper allegedly disclosing aspects of the '931 Patent. *Id.* at 10 (citing Docket No. 191-2 at 199:21–200:10, 200:24–25, 201:20–25, 234:19–25; Docket No. 191-7 at 200:8–201:11; Docket No. 191-4 at GA0014070). Second, General Access points to RSL approaching Sprint about possibly purchasing General Access's patent portfolio in 2012. *Id.* General Access argues that this must be viewed alongside Raze's decade-earlier disclosures such that RSL's post-issuance communications would have alerted Sprint to the fact that the patent application was no longer pending. *Id.* General Access argues that this is particularly probative of willfulness, especially when Sprint eventually decided to implement the same technology. *Id.* at 11.

Moreover, General Access argues, a reasonable jury could also conclude that (1) because Sprint learned about the key features of the invention in 2001, Sprint monitored the patent application and its amendments after learning of the application's existence; or (2) to the extent Sprint did not have knowledge of the patent, its ignorance can only be explained by willful blindness. *Id.* (citing *Script Sec. Sols. L.L.C. v. Amazon.com, LLC*, Case No. 2:15-cv-1030-WCB,

2016 WL 1055827, at *6, 8 (E.D. Tex. Mar. 17, 2016) (Bryson, J.); *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011)).

General Access also argues that Sprint ignores the evidence that ███████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████████ *Id.* at 12 (citing Docket No. 191-5 at 83:15–23).

General Access finally responds that Sprint's arguments ignore controlling precedent in three ways: (1) Sprint fails to construe the facts in the light most favorable to General Access; (2) Sprint views each piece of evidence in isolation rather than viewing the record in its entirety; and (3) Sprint's suggestion that knowledge of a patent application is not probative is incorrect. *Id.* at 13. As to the second argument, General Access contends that Sprint addresses the evidence related to RSL and related to Clearwire separately, without ever addressing the cumulative effect of those pieces of evidence. *Id.* (citing *WCM Indus., Inc. v. IPS Corp.*, 721 F. App'x 959, 970 (Fed. Cir. 2018)). As to the third argument, General Access contends that "*State Industries* does not establish a per se rule," and the concerns underlying *State Industries* "are no longer valid" because the case was decided "prior to the enactment of 35 U.S.C. § 122(b)(1)(A) in 1999, which provides for the publication of patent applications." *Id.* at 14–15 (quoting *id.* at 970 n.4).

Sprint replies that General Access never disputes that it has no evidence directly establishing that Sprint had pre-suit knowledge of the '931 Patent, nor does it dispute that it has no evidence directly showing that Sprint had pre-suit knowledge of the '931 Patent Application—which, even if true, cannot alone sustain a willfulness claim. Docket No. 212 at 1–3. Sprint asserts that, at best, General Access identifies a 2012 RSL disclosure with no patent-identifying information and evidence of Raze's discussions with Sprint and Clearwire in 2001–2002 allegedly

concerning the general technology relating to the later-issued patent. But, Sprint contends, neither fact is itself adequate to prove willful infringement, nor is the combination of the two under General Access's erroneous "totality of the circumstances" theory. Sprint argues that General Access provides no logical connection between the circumstances it identifies, and therefore its factually unsupported theory is inadequate as a matter of law. *Id.* at 4 (citing *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003)). Sprint contends that a reasonable factfinder could not conclude that Sprint (1) met with Raze in the early 2000s and learned about beamforming and the '931 Patent Application; (2) received teaser materials regarding a patent portfolio a decade later, where the teaser materials included no patent-identifying information nor identified the patent portfolio's owner; and (3) somehow concluded that the earlier patent application had issued with claims drafted in 2006. *Id.* And, regardless of this string of alleged events, Sprint asserts it never learned of the patent application in the early 2000s—a fact essential to General Access's argument. *Id.*

Sprint further replies that it is not arguing that knowledge of a patent application can never support a pre-suit willfulness claim; rather, Sprint argues that knowledge of a patent application alone is insufficient and must be coupled with additional evidence that the defendant was aware of the final claims of the patent as issued. *Id.* (citing *Maxell*, 2019 WL 7905455, at *5). But, here, General Access has adduced no additional evidence that Sprint learned about the issued '931 Patent, and its reliance on Sprint's purported knowledge of the '931 Patent Application in 2001 or 2002 alone cannot sustain its willfulness claim. *Id.* (citing *TracBeam LLC v. AT&T Inc.*, No. 6:11-cv-96-LD, 2013 WL 6175372, at *7 (E.D. Tex. Nov. 25, 2013)).

Finally, Sprint replies that General Access's corporate theft accusations are irrelevant. *Id.* at 5 (citing *Software Research, Inc. v. Dynatrace LLC*, 316 F. Supp. 3d 1112, 1133–34 (N.D. Cal. 2018)).

To survive summary judgment after a movant "identif[ies] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact," *Celotex*, 477 U.S. at 323, the nonmovant must bear the burden of establishing otherwise by supporting its contentions with some evidence. *Geiserman*, 893 F.2d at 793 (citing *id.* at 324); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (The non-moving party cannot "rest upon mere allegations or denials of [the] pleading but must set forth specific facts showing there is a genuine issue for trial."). To prove pre-suit willful infringement, General Access must establish that Sprint had pre-suit knowledge of the '931 Patent. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933 (2016); *see also Intellectual Ventures II LLC v. Sprint Spectrum, L.P.*, No. 2:17-cv-662-JRG-RSP, 2019 WL 1987172, at *1 (E.D. Tex. Apr. 12, 2019) ("To have a finding of willful infringement, a patent must exist, and the infringing party must have knowledge of the patent.") (citation omitted). But General Access fails to produce any evidence that Sprint had pre-suit knowledge of the issued '931 Patent.

General Access adduces no evidence that Sprint had knowledge of the issued patent as a result of the teaser materials sent by RSL in 2012: Mr. Rushford testified that such material did not include patent-identifying information or even the owner of the patents. Docket No. 164-10 at 61:17–25 ("Correct, because there was no patent numbers on the teasers, so we thought that that—you know, you have to give people a description and idea because, remember, the name of the patent owner is not on the teaser, there's no patent numbers. It's just a description of the

technology, in this case, 4GE—4G LTE, 3G LT—4G LTE. So there would be no name of the—of the patent owners, and there would be no patent numbers."). Mr. Rushford testified that patent-identifying information would not be given to a potential buyer unless it signed an NDA. *Id.* at 57:6–13, 59:5–17, 61:3–25; *see also* Ex. G at 2, § III(3)(vi). General Access has not produced any evidence that Sprint either signed an NDA or RSL violated the brokerage agreement and informed Sprint of patent numbers without such an NDA.

In an effort to survive this deficiency, General Access posits that Sprint either could have monitored the '931 Patent Application—if Sprint did in fact learn of the patent application in 2001 or 2002—or its failure to learn of the issued patent is due to Sprint's willful blindness. General Access, however, provides no evidence to support these suppositions and relies only on attorney argument. *See* Docket No. 191 at 11. This is not sufficient to survive summary judgment.[1] *See Ferring B.V. v. Barr Lab'ies, Inc.*, 437 F.3d 1181, 1193 (Fed. Cir. 2006) ("Conclusory allegations and attorney arguments are insufficient to overcome a motion for summary judgment.").

General Access thus has no evidence that Sprint knew of the '931 Patent post-issuance and pre-suit. And it is legally insufficient to support a claim for pre-suit willfulness for Sprint to have knowledge only of an unissued patent application—if Sprint even had knowledge of that. *See Maxell*, 2019 WL 7905455, at *5 ("Knowledge of a patent application alone is insufficient to demonstrate knowledge of the later issued patent.").

General Access similarly fails, however, to provide evidence that Sprint or its predecessor-in-interest Clearwire learned of the '931 Patent Application. While General Access points to the testimony of Mr. Struhsaker, Mr. Griffin and Mr. Hynek, neither Mr. Griffin nor Mr. Hynek—the

---

[1] General Access's other arguments concerning (1) Sprint's implementation of beamforming technology (Docket No. 191 at 11) and (2) Sprint's alleged corporate theft (*id.* at 12) are likewise unavailing as unsupported attorney argument. *See Ferring B.V. v. Barr Lab'ies, Inc.*, 437 F.3d 1181, 1193 (Fed. Cir. 2006).

designated corporate witness on pre-suit notice—could recall Raze's discussions with Sprint or Clearwire, or ever discussing patent applications with them. Docket No. 164-19 at 124:13–17, 180:17–25; Docket No. 164-21 at 112:24–113:6, 115:1–8. And Mr. Struhsaker testified that he assumed such information was disclosed, but he was not part of the discussions and never discussed patent applications with the companies himself. Docket No. 164-18 at 200:15–202:12. Further, the product presentation given to Sprint occurred prior to the application's filing date and the disclosure to Clearwire concerned other technology that did not include beamforming. Indeed, out of all the documents and communications produced in this investigation, General Access could only point to one slide from June 2002 that lists the '931 Patent Application—and General Access has no support to say whether this exact document was in fact shown to Sprint or Clearwire. Docket No. 191 ¶ 7 (citing Docket No. 191-3). And General Access's attempt to conflate disclosure of a general technology to the disclosure of a later-filed patent application is unavailing. *See SRI Int'l.*, 930 F.3d at 1308–09; *see also NextStep, Inc. v. Comcast Cable Commc'ns, LLC*, No. 19-1031-RGA-SRF, 2019 WL 5626647, at *2–3 (D. Del. Oct. 31, 2019) (dismissing pre-suit willfulness claim despite allegations that patentee and accused infringer had discussions about the technology underlying the asserted patents).

The time for speculation on what may have occurred has passed. Because General Access cannot provide any evidence that Sprint had pre-suit knowledge of the '931 Patent, there is no genuine issue of fact remaining for trial. Sprint's Motion for Summary Judgment of No Pre-Suit Willful Infringement (Docket No. 164) is thus **GRANTED**. It is

**ORDERED** that Sprint did not willfully infringe the '931 Patent before General Access sent its May 10, 2016 letter to Sprint contemporaneous with the filing of this lawsuit. It is further

**ORDERED** that within seven days of the issuance of this order, the parties shall jointly submit a proposed redacted version of this sealed order so that a public version can be made available.

**So ORDERED and SIGNED this 3rd day of August, 2021.**

*Robert W Schroeder III*
ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE